KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
Tel: (914) 401-9500
Julie Cvek Curley, Esq.
jcurley@kacllp.com
Jessica M. Hill, Esq.
jhill@kacllp.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

DAWKINS DEVELOPMENT GROUP INC.,

                        Debtor.
-----------------------------------------------------------X

Chapter 11
Case No. 24-22537 (SHL)
Subchapter V

## DEBTOR'S FIRST AMENDED SUBCHAPTER V
## CHAPTER 11 PLAN OF REORGANIZATION

      Dawkins Development Group Inc., the above captioned chapter 11 debtor and debtor-in-possession (the "Debtor") hereby proposes the following Plan pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

      For the purposes of this Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires). Terms used in this Plan that are defined in the Bankruptcy Code shall have the meaning assigned therein, unless specifically defined herein:

      1.1    *"Administrative Claims"* means all costs and expenses of administration of the Chapter 11 Case Allowed under §§ 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under § 507(a)(2).

      1.2    *"Administrative Professional Fee Claim"* means any Administrative Claim of a professional subject to allowance under §§ 330 or 503 of the Bankruptcy Code or an order of the Bankruptcy Court.

      1.3    *"Allowed"* means that portion of a Claim that, (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.4 *"Avoidance Claim"* means any cause of action assertable under sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or non-bankruptcy law.

1.5 *"Ballot"* means the form transmitted with the Plan to those entitled to vote on the Plan, on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and § 1126 of the Bankruptcy Code.

1.6 *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. in effect for this case.

1.7 *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of New York, White Plains Division presiding over the Chapter 11 Case.

1.8 *"Bankruptcy Rule(s)"* means the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto, in effect for this case.

1.9 *"Business Day"* means any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.10 *"Cash"* means legal tender of the United States of America or cash equivalents.

1.11 *"Chapter 11 Case"* means the chapter 11 case commenced by the voluntary filing by the Debtor in the Bankruptcy Court and assigned case number 24-22537(SHL).

1.12 *"Claim"* is defined in § 101(5) of the Bankruptcy Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under §§ 550 or 553 of the Bankruptcy Code and any claim against the Debtor that does not arise until after the commencement of the Chapter 11 Case for a tax entitled to priority under § 507(a) of the Bankruptcy Code.

1.13 *"Class"* means a category of Holders of Claims as described in Articles III and IV.

1.14 *"Confirmation Date"* means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.15 *"Confirmation Order"* means the order of the Bankruptcy Court pursuant to § 1129 of the Bankruptcy Code confirming the Plan.

1.16 *"Debtor"* means Dawkins Development Group Inc.

1.17 *"Disputed Claim"* means (a) any Claim or portion of a Claim (other than an Allowed Claim) which is scheduled by the Debtor as disputed, contingent or unliquidated; or (b) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code as unliquidated or contingent; or (c) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code and as to which an

2

objection to the allowance thereof has been interposed within the time limitation by the Bankruptcy Code and Bankruptcy Rules by an Order of the Court, or by this Plan, which objection has not been determined, in whole or in part by a Final Order.

1.18    *"Distribution"* means a payment of Cash required under this Plan to be distributed to the holders of Allowed Claims.

1.19    *"Distribution Address"* means the address set forth (i) on the Schedules filed with the Bankruptcy Court, (ii) on the books and records of the Debtor or its agents, or (iii) in a letter of transmittal by a Holder of an Allowed Claim, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the foregoing listed documents.

1.20    *"Distribution Agent"* means if the Plan is confirmed under § 1191(b), the Subchapter V Trustee shall be the disbursing agent. If the Plan is confirmed under § 1191(a), the Reorganized Debtor shall be the disbursing agent.

1.21    *"Effective Date"* means the first Business Day occurring after the Confirmation Order becomes a Final Order.

1.22    *"Equity Interest"* means any equity interest in the Debtor represented by, related to, or arising from stock or other equity securities of the Debtor.

1.23    *"Estate"* means the estate of the Debtor pursuant to §§ 541 and 1115 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.24    *"Exempt"* means any property which the Debtor has exempted on the Schedules filed in the Chapter 11 Case pursuant to § 522 of the Bankruptcy Code.

1.25    *"Final Decree"* has the meaning given to it Bankruptcy Rule 3022.

1.26    *"Final Order"* means an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

1.27    *"Holder"* means the legal or beneficial holder of a Claim (and, if used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

1.28    *"Impaired"* means a Claim or Class that is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.29    *"Jessup"* means Jessup Investments, LLC.

1.30    *"Jessup Stipulation"* means the Stipulation and Order dated November 25, 2024, entered into by and between the Debtor and Jessup for the surrender of the Texas Lease, annexed hereto as <u>Exhibit A</u>.

1.31   "*Lien*" has the meaning given to it in § 101(37) of the Bankruptcy Code, i.e., means charge against property to secure payment of a debt or performance of an obligation.

1.32   "*Marquis*" means Marquis Associates, LLC.

1.33   "*Non-Tax Priority Claim*" means any claim against the Debtor to the extent entitled to priority in payment under § 507(a)(4)-(6) of the Bankruptcy Code.

1.34   "*Non-Exempt Property*" means any property of the Estate within the meaning of § 541 of the Bankruptcy Code that is not Exempt.

1.35   "*Petition Date*" means June 14, 2024.

1.36   "*Plan*" means this First Amended Subchapter V Plan dated November __, 2024 and any amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code.

1.37   "*Priority Claim*" means a Claim, other than an Administrative Claim, which is entitled to priority under § 507 of the Bankruptcy Code.

1.38   "*Priority Tax Claim*" means a claim against the Debtor to the extent entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

1.39   "*Professionals*" means those persons or entities: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code entitled to compensation for services rendered prior to the Effective Date pursuant to §§ 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to § 503(b)(2) and (4) of the Bankruptcy Code.

1.40   "*Pro Rata*" means proportionally according to the total amount of Allowed Claims in a particular Class.

1.41   "*Reorganized Debtor*" means the Debtor on and after the Effective Date.

1.42   "*Reserve Fund*" shall be a fund which shall be established under this Plan, which shall be equal to a sum sufficient to pay disputed Claims which would have been paid under the Plan but for the dispute as either claimed by the creditor or determined by the Court. The Reserve Fund shall be maintained by Debtor's counsel in an attorney IOLA account.

1.43   "*SBA*" means the United States Government on behalf the U.S. Small Business Administration.

1.44   "*Schedules*" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.45   "*Secured Claim*" means a claim secured by a Lien on property of the Estate to the extent of the value of such collateral, as determined in accordance with § 506(a) of the Bankruptcy

4

Code or, in the event such claim is subject to setoff under § 553 of the Bankruptcy Code, to the extent of such setoff.

1.46 *"Subchapter V Trustee"* means Samuel Dawidowicz as the Court appointed and duly qualified as Chapter 11 Subchapter V Trustee in this Chapter 11 Case.

1.47 *"Texas Lease"* means the nonresidential real property lease dated April 10, 2024 between the Debtor, as tenant, and Jessup, as landlord, for the satellite office premises located at 1430 Regal Row, Dallas, Texas 75247.

1.48 *"Unimpaired"* shall mean, with respect to any Class, that such Class is not Impaired.

1.49 *"Unsecured Claim"* means any Claim that is not an Administrative Claim, Priority Claim or Secured Claim.

1.50 *"White Plains Lease"* means the nonresidential real property lease dated January 1, 2023 between the Debtor, as tenant, and Marquis, as landlord for the general office premises utilized by the Debtor located at 55 Lafayette Avenue, Suite 365, White Plains, New York 10603.

**ARTICLE II**
**BACKGROUND**

2.1 Information Regarding the Debtor.

The Debtor is a licensed contractor that provides home remodeling and renovation services. The Debtor specializes in house remodeling, kitchen and bath renovations, basement finishing and porch and deck improvements. The Debtor also provides full-scope architectural and environmental planning services including demolition, waterproofing and mold removal.

Facing challenges akin to many businesses, the Debtor experienced setbacks from the financial strain caused by the COVID-19 pandemic. Consequently, it struggled to meet vendor payments and fulfill debt obligations. The Debtor obtained a COVID-19 economic injury disaster loan with the U.S. Small Business Administration (the "EIDL Loan") which helped the Debtor continue its operations during and after the COVID-19 pandemic. However, when the payments started on the EIDL Loan, the Debtor was not able to make the monthly payments.

Further, the Debtor was involved in a lawsuit related a prior project where the homeowner asserted claims against the Debtor for breach of contract, and the Debtor asserted claims against the homeowner for outstanding receivables due to the Debtor under the contract, captioned *Ranganathan Purushotha v. Dawkins Development Group, Inc., Daniel Dawkins, and John and Jane Does 1-10,* pending in New York Supreme Court, Queens County, Index No. 724812/2020 (the "State Court Action"). Notwithstanding the Debtor's best efforts, he could not resolve the State Court Action.

More recently, the Debtor has begun to recover from its setbacks. The Debtor is on track to complete its current projects and is in promising negotiations for future projects. Although the Debtor has recently strengthened its operations, because of the overwhelming amount of debt, it filed this Chapter 11 Case in order to reorganize its financial affairs.

  2.2  Significant Events During the Bankruptcy Case.

On June 14, 2024 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") and stated in its petition that it is a small business Debtor pursuant to Bankruptcy Rule 1020(a) and elected to proceed as a small business Debtor under Subchapter V of chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code. On June 17, 2024, the United States Trustee appointed Samuel Dawidowicz (the "Subchapter V Trustee") to serve as Subchapter V trustee in this Chapter 11 Case pursuant to §1183(a) of the Bankruptcy Code and has qualified and served in that capacity. No other trustee or examiner has been appointed.

A. Cash Collateral Motion

By its Cash Collateral Motion, the Debtor sought entry of an order authorizing their use of property which may constitute "cash collateral" in which a secured creditor may assert a security interest. The Debtor sought use of cash collateral only to the extent necessary and essential to continue the operation of its business and to preserve the value of its estate during the course of the Chapter 11 Case. Without the use of Cash Collateral, the Debtor will not be able to pay the ordinary and necessary costs, fees, and expenses to operate its business and pay its employees, which would result in an immediate cessation of the Debtor's operations and impede any ability to reorganize. Thus, the Debtor's use of Cash Collateral was necessary to prevent immediate and irreparable harm to the Debtor's estate.

A hearing was held before the Court for the Debtor's use of cash collateral on August 28, 2024 where the Court approved the Debtor's use of cash collateral on a final basis (the "Cash Collateral Order", Docket No. 22).

B. Retention Application

On July 17, 2024, the Debtor filed its application to retain Kirby Aisner & Curley LLP as its bankruptcy counsel in this Chapter 11 Case. By order of the Bankruptcy Court dated August 14, 2024, the Bankruptcy Court approved the retention of Kirby Aisner & Curley LLP [Docket No. 19].

C. The Debtor's Schedules and Statement of Financial Affairs

On July 16, 2024, the Debtor filed its Schedules of Assets and Liabilities [Docket No. 9], and on July 30, 2024, the Debtor filed its Statement of Financial Affairs [Docket No. 18] (collectively, the "Schedules"). The Debtor's Schedules are available on the Bankruptcy Court's website: www.nysb.uscourts.gov (login and password required).

D. Claims Deadline and Review

September 27, 2024 (the "Bar Date") was established as the last date by which creditors shall file proofs of claim in the Chapter 11 Cases, except for governmental units which have until December 11, 2024 to file claims. Following the passing of the Bar Date, the Debtor reviewed and analyzed the claims filed.

E.   Court Hearings and Meetings and Debtor's Obligations

The Debtor participated in the Initial Debtor Interview on July 2, 2024. Thereafter, the Debtor attended the §341 Meeting of Creditors conducted by the Office the U.S. Trustee on July 16, 2024. The Debtor has attended all hearings and case status conferences before this Court.

2.3   Description of Debtor's Assets and Liabilities.

Below is the Debtor's Balance Sheet as of October 31, 2024:

| ASSETS | VALUE |
|---|---|
| Chase Bank DIP Checking Account ending in ****5650 | $ 127,661.08 |
| Security Deposits | $ 12,900.00 |
| Accounts Receivable | $ 2,640,218.68 |
| Office Computers & Electronics | $ 1,000.00 |
| Trailer (used to store tools) | $ 1,000.00 |
| Tools and supplies | $ 5,000.00 |
| Professional Retainers (Kirby Aisner & Curley LLP) | $ 15,000.00 |
| Dump Truck | $ 40,000.00 |
| Contingent Claims & Lawsuits | $ Unknown |
| TOTAL ASSETS | $ 2,842,779.76 |
| **LIABILITIES** | **AMOUNT** |
| Professional Fees | $ 24,786.59 |
| Secured Debt | $ 674,168.65 |
| Priority Debt | $ 7,601.98 |
| Unsecured Debt[1] | $ 248,386.28 |
| TOTAL LIABILITIES | $ 954,943.50 |

2.4   The Debtor's Historical Operations and Projections.

The Debtor's revenue is based upon payments from contract vendees from the Debtor's various construction projects, which installments are generally paid to the Debtor approximately 60 to 90 days after completion of certain benchmarks in the Debtor's construction contracts.

In 2022, the Debtor's income was approximately $89,378.00. While the Debtor is on extension to file its 2023 tax returns, the Debtor estimates its 2024 gross revenues to be approximately $1,030,000. Additionally, the Debtor estimates that as of October 31, 2024, its 2024 year-to-date gross revenues are approximately $850,000.

---

[1] This amount is based upon the Debtor's Schedules and the claims filed in this Chapter 11 Case as of the date of this Plan. The deadline to file claims is September 27, 2024. Additionally, this amount does not include the claim of Ranganathan Purushothaman, which is contingent, disputed, and unliquidated.

7

2.5    Projections.

The projection below (the "Projection") sets forth the forecasted income and expenses with disposable income for the duration of the Plan:

|  | Year 1 - 2025 | Year 2 – 2026 | Year 3 – 2027 |
|---|---|---|---|
| **Total Income:** | $2,450,000.00 | $2,695,000.00 | $2,964,500.00 |
| **Expenses:** | | | |
| Rent | $24,000.00 | $26,400.00 | $29,040.00 |
| Office Expenses & Phones | $22,200.00 | $24,420.00 | $26,862.00 |
| Employees | $265,920.00 | $292,512.00 | $321,763.00 |
| Subcontractors | $955,000.00 | $1,050,500.00 | $1,155,550.00 |
| Outside Contractors | $232,000.00 | $255,200.00 | $280,720.00 |
| Building Materials | $503,000.00 | $553,300.00 | $608,630.00 |
| Insurance | $21,600.00 | $23,760.00 | $26,136.00 |
| Vehicle Expenses (Gas, Maint., etc.) | $19,200.00 | $21,120.00 | $23,232.00 |
| Bookkeeper | $21,600.00 | $23,760.00 | $26,136.00 |
| Miscellaneous | $80,000.00 | $88,000.00 | $96,800.00 |
| SBA Payments | $28,800.00 | $28,800.00 | $28,800.00 |
| Estimated Taxes (Est. at 15% of Net Income) | $41,502.00 | $46,084.00 | $51,125.00 |
| Total Expenses: | $2,206,820.00 | $2,433,856.00 | $2,674,794.00 |
| **Net Profit/Loss:** | **$235,178.00** | **$ 261,144.00** | **$ 289,706.00** |

2.6    Projected Recovery of Avoidable Transfers

In addition to the Debtor's assets listed on the balance sheet above, the Debtor, together with its counsel, has reviewed and analyzed any transfers of the Debtor's assets and major transactions in the six (6) years prior to the filing of this Chapter 11 case. The Debtor believes, after a thorough investigation and review with its counsel, that no meritorious causes of action exist under §§ 510, 544, 547, 548, 550 and 553 of the Bankruptcy Code. As such, the Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

## ARTICLE III
## DESIGNATION OF CLAIMS

All Claims, as defined herein against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

3.1    Classification of Claims. Section 3.2 sets forth the designation of the Classes of Claims. A Claim is classified in a particular Class for voting and Distribution purposes only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim qualifies within the description of that different Class or Classes.

Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article III provides explanations of the different Claim classifications. Administrative Claims, Administrative Professional Fee Claims, United States Trustee's Fees, and Priority Tax Claims have not been classified and are excluded from the Classes set forth in section 4.1 in accordance with § 1123(a)(1) of the Bankruptcy Code. The treatment to be provided for Allowed Claims pursuant to this Plan and the consideration provided for herein shall be in full and final satisfaction, settlement, release and discharge of such respective Claims.

3.2    Classes. For purposes of the Plan, those persons holding Claims against the Debtor are grouped in accordance with §1122 of the Bankruptcy Code as follows:

*Class 1*: shall consist of all Allowed Secured Claim of the SBA.
*Class 2*: shall consist of the Allowed General Unsecured Claims.
*Class 3*: shall consist of the Holders of Equity Interests in the Debtor.

## ARTICLE IV
## TREATMENT OF CLAIMS UNDER THE PLAN

The treatment of claims under the Plan is as follows:

4.1 Unclassified Claims.

(a)    Allowed Administrative Claims other than Administrative Professional Fee Claims: These Allowed Claims shall be paid in full, in Cash, in such amounts as (i) are incurred in the ordinary course of business by the Debtor; (ii) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date upon which there is a Final Order allowing such Administrative Expense Claim or any other date specified in such Order; or (iii) may be agreed upon between the Holder of such Administrative Expense Claim and the Debtor. The Debtor estimates that Allowed Administrative Claim of Marquis to be $5,921.91.[2]

(b)    Allowed Administrative Professional Fee Claims: All awards or allowances by the Bankruptcy Court of Professionals fees and expenses, or of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, if granted, shall be paid in full in such amounts as allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Professionals Claim becomes Allowed; or (ii) upon such other terms as may be mutually agreed upon between such Holder of an Allowed Professionals Claim and the Debtor or, on and after the Effective Date, the Reorganized Debtor. All Professionals' fees and expenses for services rendered in connection with this Chapter 11 Case and the Plan after the Effective Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be billed to the Reorganized Debtor, and paid by the Reorganized Debtor in the ordinary course, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Professionals cannot agree on the amount of post-

---

[2] *See,* Proof of Claim No. 10 filed by Marquis on September 25, 2024.

Confirmation Date fees and expenses to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court. The Debtor estimates all Allowed Administrative Professional Fee Claims, net of retainer payments to be $15,00.00.

(c)     Priority Tax Claims: Allowed Priority Tax Claim of Department of Treasury – IRS and NYS Department of Taxation & Finance shall be paid the amount of their Allowed Claim, in full, in Cash, on the Effective Date. The Debtor's Priority Tax Claims, as filed, total $7,601.98.

(d)     Subchapter V Trustee Fees: Under the Plan, the Subchapter V Trustee's reasonable compensation for actual, necessary services rendered and reimbursement for actual, necessary expenses incurred through and including the Confirmation Date under Sections 330(a), and 326(a) and (b) of the Bankruptcy Code, if granted, shall be paid in full in such amounts as allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Claim becomes Allowed; or (ii) upon such other terms as may be mutually agreed upon between the Subchapter V Trustee and the Debtor or, on and after the Effective Date, the Reorganized Debtor. The Reorganized Debtor shall comply with the reporting requirements of the Office of the United States Trustee until the entry of a Final Decree or dismissal or conversion of the case and shall file quarterly reports on January 15, April 15, July 15 and October 15 of each year until entry of a Final Decree. The Debtor estimates the Subchapter V Trustee's fees and expenses to be approximately $7,500.00[3].

    4.2 Classified Claims

(a)     Class 1: Class 1 shall consist of the Allowed Secured Claim of the SBA. The Holder of the Allowed Class 1 Secured Claim shall receive payment in full, in Cash, with payments of $2,400 per month, until paid in full. The principal balance of the Allowed Class 1 Secured Claim shall accrue interest at a rate of Three and Three-Fourths percent (3.75%) per annum. There shall be no prepayment penalty. Until such time that the Allowed Class 1 Claim is paid in full, the lien which secures the Class 1 Claim shall remain in full force and effect. The holder of the Class 1 Claim is not impaired pursuant to Section 1124 of the Bankruptcy Code, are not entitled to vote to accept or reject the Plan and are deemed to have accepted the Plan.

(b)     Class 2: Class 2 shall consist of the Allowed Unsecured Claims. Each holder of an Allowed General Unsecured Claim shall receive payment in full, in Cash, from the Debtor's cash on hand (not required for operations) and its projected disposable income payable in twelve (12) equal quarterly payments in the amount of $21,350, which shall be distributed, Pro Rata, to each holder of an Allowed Unsecured Claim commencing on the Plan Effective Date, and thereafter on the 30th day of December, March, June, and September, of each year, and concluding on September 2027. The Debtor estimates a 100% distribution to Class 2 Claims. The holders of the Class 2 Claims are not impaired pursuant to Section 1124 of the Bankruptcy Code, are not entitled to vote to accept or reject the Plan and are deemed to have accepted the Plan.

---

[3] The Subchapter V Trustee provided the Debtor with monthly statements for the months of June ($840), July ($2,047.50), August ($630), and September ($735) 2024, however this amount includes an estimate for anticipated services to be rendered by the Subchapter V Trustee through the conclusion of the Chapter 11 Case.

A list of payment to the Class 2 Claims is below:

| Name | Allowed Amount | Quarterly Payment |
|---|---:|---:|
| NYS Dept. of Labor (POC 1) | $1,307.63 | $108.97 |
| NYSDTF (POC 2) | $861.58 | $71.80 |
| Goat Tile LLC (POC 3) | $2,577.00 | $214.75 |
| Helen Gonzales (POC 4) | $207,619.96 | $17,301.66 |
| IRS (POC 6) | $0.00 | $0.00 |
| Valvo Electric LLC (POC 7) | $2,985.00 | $248.75 |
| Bug Johnson's Pest Services, LLC (POC 8) | $5,443.75 | $453.65 |
| North Georgia Dumpsters, LLC c/o Benjamin Chaise Recovery Services (POC 9) | $728.98 | $60.75 |
| NYS Dept. of Labor (POC 11) | $4,010.25 | $334.19 |
| ADM Mechanical | $6,787.77 | $565.65 |
| Cohen Hochman & Allen | $1,075.00 | $89.58 |
| Interstate Waste Services Inc. | $3,704.05 | $308.67 |
| NYS Unemployment Insurance | $1,838.71 | $153.23 |
| People Ready | $8,159.24 | $679.94 |
| Ready Refresh by Nestle | $147.34 | $12.28 |
| Tax Time NYC Inc. | $5,000.00 | $416.67 |
| TOTAL | $252,246.26 | $21,020.52 |

(c)     Class 3: Class 3 consists of Equity Interests in the Debtor. The holder of the Class 3 Equity Interest is Daniel S. Dawkins. Upon the Effective Date, the Class 3 Equity Interest holder shall retain his interest in the Debtor but shall not receive any distribution on account of such Interest during the pendency of the Plan. Class 3 Equity Interests are not impaired pursuant to Section 1124 of the Bankruptcy Code and are deemed to accept the Plan.

## ARTICLE V
## CONFIRMATION OF THE PLAN

5.1     Voting by Impaired Classes of Claims: A Class of Claims Impaired under the Plan shall have accepted the Plan if (i) the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (ii) more than one-half in number of the Holders (other than any Holder designated under § 1126(c) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan. However, none of the Holders of Claims under the Plan are Impaired or entitled to vote to accept or reject the Plan, and, as such, no votes of such Holders will be solicited.

5.2     Acceptance by Impaired Classes of Claims: Since none of the Holders of the Claim are impaired or entitled to vote to accept the Plan as set forth in Section 5.1 hereinabove, the Debtor will seek confirmation of the Plan under §§1191(a) and 1129(a).

     5.3    <u>Rejection by Impaired Classes of Claims</u>: Since none of the Holders of the Claims are impaired or entitled to vote to accept the Plan as set forth in Section 5.1 hereinabove, the Debtor will not be seeking confirmation of this Plan pursuant to Section 1191(b) of the Bankruptcy Code, which states that the Court may approve this Plan "if the plan does not discriminate unfairly, and is fair and equitable" with regard to each impaired class that has not accepted it.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION

     6.1    <u>Means of Implementation</u>. The Plan will be funded from the Debtor's Cash on hand and disposable income over the three-year period following the Effective Date. On or before the Effective Date of the Plan, the Debtor shall deposit into an escrow account maintained by its counsel the amount necessary to fund the initial distribution under the Plan. The following payments will be made under the Plan on the Effective Date:

| Effective Date Payments | |
|---|---|
| ***Administrative Claims (To be paid on Effective Date)*** | |
| Jessup Investments, Inc. | $11,108.30 |
| Kirby Aisner & Curley LLP (Est.) | $15,000.00 |
| Samuel Dawidowicz, SubV Trustee (Est.) | $7,500.00 |
| ***Priority Claims (To be paid on Effective Date)*** | |
| NYS Dept. of Labor (POC 1) | $795.31 |
| NYSDTF (POC 2) | $582.30 |
| IRS (POC 6) | $6,224.37 |
| Marquis & Associates (POC 10) | $1,973.97 |
| ***Class 1 – US Small Business Admin. (Monthly Pymt)*** | $2,400.00 |
| ***Class 2 – General Unsecured Claims (1st (Quarterly Pymt)*** | |
| NYS Dept. of Labor (POC 1) | $108.97 |
| NYSDTF (POC 2) | $71.80 |
| Goat Tile LLC (POC 3) | $214.75 |
| Helen Gonzales (POC 4) | $17,301.66 |
| IRS (POC 6) | $0.00 |
| Valvo Electric LLC (POC 7) | $248.75 |
| Bug Johnson's Pest Services, LLC (POC 8) | $453.65 |
| North Georgia Dumpsters, LLC c/o Benjamin Chaise Recovery Services (POC 9) | $60.75 |
| NYS Dept. of Labor (POC 11) | $334.19 |
| ADM Mechanical | $565.65 |
| Cohen Hochman & Allen | $89.58 |
| Interstate Waste Services Inc. | $308.67 |
| NYS Unemployment Insurance | $153.23 |
| People Ready | $679.94 |
| Ready Refresh by Nestle | $12.28 |
| Tax Time NYC Inc. | $416.67 |
| **TOTAL** | **$66,604.79** |

6.2     Distribution of Cash. Except as otherwise provided in the Plan, including without limitation Article VIII of this Plan, the Cash required to be distributed to holders of Allowed Claims under the Plan shall be distributed by the Disbursing Agent as each distribution comes due under this Plan, except that to the extent that a Claim becomes an Allowed Claim after the respective distribution date, in which case distribution shall be made within fourteen (14) days after the order allowing such Claim becomes a Final Order.

6.3     Professional Fees Post-Confirmation. All Professionals' fees and expenses for services rendered in connection with this Chapter 11 Case and the Plan after the Effective Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be billed to the Reorganized Debtor, and paid by the Reorganized Debtor in the ordinary course, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Professionals cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court.

6.4     Post-Confirmation Duties of the Subchapter V Trustee. If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, following the entry of the Confirmation Order and substantial consummation of the Plan, the Subchapter V Trustee services shall terminate as contemplated by Section 1183(c) of the Bankruptcy Code.

## ARTICLE VII
## SUBCHAPTER V PROVISIONS

7.1     Liquidation Analysis. To confirm this Plan, the Court must find that all creditors will receive at least as much under the Plan as they would receive in a chapter 7 liquidation. Since the Debtor will be remitting payment to all Allowed Claims in full through its Plan, a chapter 7 liquidation would not result in greater distribution to the Debtor's creditors. The Debtor's Liquidation Analysis is below:

**Chapter 7 Liquidation Analysis**
(as of October 31, 2024)

| Assets | | Less Costs of Liquidation | |
|---|---|---|---|
| Bank Accounts | $127,661.08 | Chapter 7 Prof. Fees (Est.) | $10,000.00 |
| Dump Truck | $40,000.00 | Auctioneer Fees & Costs | $7,800.00 |
| Misc Tools & Supplies | $5,000.00 | Ch. 7 Trustee Commission | $26,580.00 |
| Computers & Electronics | $1,000.00 | **Total Liquidation Costs** | **$44,380.00** |
| Trailer | $1,000.00 | | |
| Accounts Receivable (5%) | $264,021.87 | *Less Ch 11 Admin Claims* | *($30,000.00)* |
| Security Deposits | $12,900.00 | *Less Secured Claims* | *($674,168.65)* |
| Professional Retainers | $15,000.00 | *Less Priority Claims* | *($7,601.98)* |
| Contingent Claims | $Unknown | Net Avail for Unsecured | ($289,567.40) |
| **Total Assets** | **$466,582.95** | **Projected Distribution** | **0%** |
| | | | |

13

7.2     Projections. In order to confirm this Plan, the Debtor must establish that it will have enough cash over the life of the Plan to make the required distributions due hereunder. Section 1191(d) of the Bankruptcy Code requires that all of the Debtor's disposable income be contributed to the Plan. Section 2.4 above includes the Debtor's financial projections which demonstrate that the Plan includes all of the Debtor's projected disposable income. As such, the Debtor submits that the Plan satisfies this requirement for confirmation.

### ARTICLE VIII
### PROVISIONS GOVERNING DISTRIBUTIONS

8.1     Distribution Agent. If the Plan is confirmed under § 1191(b), the Subchapter V Trustee shall be the Disbursing Agent.  If the Plan is confirmed under § 1191(a), the Reorganized Debtor shall be the Disbursing Agent.

8.2     Manner of Distributions under the Plan. Distributions to be made pursuant to the Plan shall be made by check drawn on a domestic bank and mailed to the Distribution Address of the recipient of the Distribution. Any Distribution required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

8.3.    Rounding to the Nearest Dollar. Any other provision of the Plan to the contrary withstanding, no payments of portions of a dollar will be made. Whenever any payment of a portion of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down).

8.4     Unclaimed Cash. Except as otherwise provided herein, in the event any claimant fails to cash any Distribution within six (6) months from the date such Distribution is distributed, such claimant shall forfeit all rights thereof, and to any and all future payments, and thereafter the Claim for which such Distribution was distributed shall be treated as a disallowed Claim. All unclaimed Distributions shall be redistributed with the next distribution.

### ARTICLE IX
### PROCEDURES FOR RESOLVING DISPUTED CLAIMS

9.1     Time for Objections to Claims. Objections to Claims, except for those Claims more specifically deemed Allowed in the Plan, may be filed by Reorganized Debtor up to and including sixty (60) days following the entry of the Confirmation Order. With respect to disputed Claims, the Disbursing Agent will hold in the Reserve Fund such funds as would be necessary to make the required distribution on the Claim, as listed either in the Schedules or the filed proof(s) of Claim.

9.2     Resolution of Disputed Claims. Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claim, in its sole discretion, without notice to any party in interest.

9.3     Payments. Payments and Distributions to each Holder of a disputed Claim that ultimately becomes an allowed Claim by a Final Order of the Court shall be made in accordance with the Plan. Such payments and distributions shall be made within thirty (30) days after the later

of the Distribution Date or the entry of a Final Order allowing such Claim. Payments made in accordance with this section shall not include interest on the amount of such payment.

# ARTICLE X
# DISCHARGE AND INJUNCTION

10.1    Full and Final Satisfaction. All payments, Distributions and transfers of Cash or property under the Plan are in full and final satisfaction, settlement and release of all Claims related to the Chapter 11 Case against the Debtor and the Estate.

10.2    Discharge. If the Debtor's Plan is confirmed under Section 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in Section 1141(d)(6) of the Bankruptcy Code. If the Debtor's Plan is confirmed under Section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in Section 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in Section 1192 of the Bankruptcy Code; or (ii) excepted from discharge under Section 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

10.3    Pre-Discharge Injunction. Except as otherwise expressly provided in the Plan, the Confirmation Order, or such other order of the Bankruptcy Court that may be applicable, all persons or entities who have held, hold or may hold Claims or any other debt or liability that is to be discharged, terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability that is terminated or cancelled pursuant to the Plan against the Debtor's Estate, or its income, properties or interests in properties, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against, the Estate, or its respective properties or interests in properties, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor, or against its income, property or interests in property, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor, or the Reorganized Debtor, or against its respective property or interests in property, with respect to any such Claim or other debt or liability that is discharged that is terminated or cancelled pursuant to the Plan, in respect of: (i) any actions taken prior to Confirmation of the Plan; (ii) the Plan; (iii) the authorization for or the formulation, negotiation, confirmation or consummation of the Plan; (iv) Distributions, payments or transfers made under and in accordance with the provisions of the Plan; or (v) acts performed pursuant to the Plan. Nothing herein shall limit or impair (i) the United States Government or any of its agencies from enforcement of the laws and regulations of the United States, and (ii) New York State government's police powers to enforce criminal, regulatory, and environmental laws.

15

      10.4    <u>Exculpation</u>. Neither the Debtor nor any of its respective trustees, officers, employees, attorneys, advisors, agents, representatives and assigns (the "<u>Released Parties</u>") shall have or incur any liability to any entity for any action taken or omitted to be taken that occurred after the Petition Date in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this chapter 11 case or the Plan except with respect to (a) their obligations under the Plan and any related agreement or (b) for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 9.1 or 9.2 hereof shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, the Purchaser, or any of their respective trustees, members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "<u>Debtor Released Parties</u>"), nor shall anything in Sections 9.1 or 9.2 hereof enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against the Debtor Released Parties referred to herein for any liability whatever, including without limitation, any Claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties, or (b) limit the liability of the Debtor's Professionals Released pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

**ARTICLE XI**
**<u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

      11.1    <u>Executory Contracts and Unexpired Leases</u>. Plan: Upon the Effective Date of this Plan, the Debtor will be assuming the White Plains Lease and will be rejecting the Texas Lease. Annexed hereto as Exhibit A please find a copy of the Jessup Stipulation, which outlines the terms of the rejection and any rejection damage claim filed by Jessup. Besides the foregoing, the Debor will be conclusively deemed to have assumed all other executory contracts and/or unexpired leases not expressly rejected before the date of the order confirming this Plan, upon the effective date of this Plan. **<u>If you are a party to a lease or contract to be assumed or rejected and you object to the treatment of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the Confirmation of the Plan. ANY REJECTION DAMAGE CLAIM OR CLAIM TO A CURE PAYMENT MUST ALSO BE FILED BY SUCH DEADLINE.</u>**

## ARTICLE XII
## DEFAULT

12.1     Failure of the Debtor to make the Distributions required under the Section 6.1 of the Plan within thirty (30) days of the deadlines set forth therein, or failure of the Debtor to comply with any of the covenants or obligations contained in the Plan, which failure shall remain uncured for a period of ten (10) days after written notice and an opportunity to cure, shall constitute a default under the Plan. The foregoing shall not be construed to prevent the implementation of any modification of the Plan, in accordance with the provisions of the Bankruptcy Code. In the event of an uncured default hereof, any creditor or party in interest may seek conversion or dismissal of this Chapter 11 case.

## ARTICLE XIII
## RETENTION OF JURISDICTION

13.1 Following the Effective Date of the Plan, of the Plan, the Bankruptcy Court shall retain such jurisdiction over this case as is legally permissible, including such jurisdiction as is necessary to ensure that the intents and purposes of the Plan are carried out. The Bankruptcy Court shall also expressly retain jurisdiction, without limitation:

(a)     To determine all controversies relating to or concerning the allowance of Claims upon objection to such Claims by any party in interest;

(b)     To determine requests for payment of Administrative and proof of Claims, including any and all Administrative Professional Fee Claims;

(c)     To determine and, if necessary, liquidate, any and all Claims arising from the rejection of any executory contracts or unexpired leases;

(d)     To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 157 and 1334;

(e)     To determine all disputed, contingent or unliquidated Claims;

(f)     To determine requests to modify the Plan pursuant to §1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(g)     To make such orders as are necessary or appropriate to enforce and carry out the provisions of the Plan;

(h)     To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan and the Confirmation Order; and

(i)     To enter a final decree closing the Chapter 11 Case.

## ARTICLE XIV
## GENERAL & MISCELLANEOUS PROVISIONS

14.1     Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code not otherwise defined herein are used in the Plan.

14.2     Severability. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

14.3     Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

14.4     Article and Section References. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

14.5     Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of New York govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

14.6     Revocation or Withdrawal of the Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation hearing. If the Debtor so revokes or withdraws the Plan in its entirety, then the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to (a) constitute a waiver or release of any claims by or against, or any interests in, the Debtor or any other person, or (b) prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor. If the Debtor so revokes or withdraws the Plan in part, then only the part of the Plan so revoked or withdrawn shall be null and void.

14.7     Modification of the Plan. The Debtor reserves the right, in accordance with §1127 of the Bankruptcy Code, to amend or modify the Plan with order of the Bankruptcy Court as may be required.  After the Effective Date, the Debtor may, subject to order of the Bankruptcy Court, and in accordance with §1127 of the Bankruptcy Court, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

14.8     Deletion of Certain Classes. Any class of Claims that is not occupied as of the date of the commencement of the Confirmation hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed deleted from the Plan for all purposes.

24-22537-shl    Doc 32    Filed 12/02/24    Entered 12/02/24 16:18:03    Main Document
Pg 19 of 19

      14.9    <u>No Admissions</u>. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any person with respect to any matter set forth herein.

      14.10    <u>Further Actions</u>. The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, certificates, releases, and other agreements and to take such other action as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the transactions contemplated herein and therein.

      14.11    <u>Status Reports</u>. Subsequent to the Effective Date of this Plan, the Debtor shall file with the Bankruptcy Court post-Confirmation status reports detailing its progress toward a Final Decree in this case. Status reports shall be filed on or before January 15, April 15, July 15, and October 15 of each year until a Final Decree is entered closing the case.

      14.12    <u>Notices</u>. Any notice to be provided under the Plan shall be in writing and sent by certified mail, return receipt requested, and by email, addressed as follows:

        Julie Cvek Curley, Esq.
        Kirby Aisner & Curley LLP
        700 Post Road, Suite 237
        Scarsdale, New York 10583
        jcurley@kacllp.com

Dated: Scarsdale, New York
       November 27, 2024

        DAWKINS DEVELOPMENT GROUP INC.

        By: <u>/s/ Daniel S. Dawkins</u>
            Daniel S. Dawkins, President

Dated: Scarsdale, New York
       November 27, 2024

        KIRBY AISNER & CURLEY LLP
        *Attorneys for the Debtor*
        700 Post Road, Suite 237
        Scarsdale, New York 10583
        Tel: (914) 401-9500
        jcurley@kacllp.com
        jhill@kacllp.com

        By: <u>/s/ Julie Cvek Curley</u>
            Julie Cvek Curley, Esq.
            Jessica M. Hill, Esq.